UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CHARLES EDWARD MOSS, JR.,

    Defendant.
_____/

No. CR 13-0790 PJH

**ORDER DENYING MOTIONS TO SUPPRESS**

On April 2, 2014, this matter came before the court on the motions of defendant Charles Edward Moss, Jr. to suppress evidence and to suppress witness identification. Having carefully considered the relevant legal authority, the arguments of counsel, the motion papers and the record, the court DENIES the motion to suppress evidence resulting from the bicycle stop and DENIES the motion to suppress the witness identification for the reasons stated on the record and as set forth below.

**I.     Motion to Suppress Evidence Resulting from Bicycle Stop**

For the reasons fully stated at the hearing, the court finds that the bicycle stop was supported by reasonable suspicion, rising to the level of probable cause, that defendant had committed a crime, namely selling narcotics in a controlled buy that was under surveillance. *See United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). The officers also had reasonable suspicion that defendant had committed a traffic violation, as a separate ground for conducting the traffic stop. The court determines that it is not necessary to hold an evidentiary hearing to determine whether defendant actually stopped behind the limit line next to the stop sign at the intersection where he was observed by the officers. The motion to suppress evidence from the traffic stop is **DENIED**.

## II.   Motion to Suppress Witness Identification

Defendant contends that showing the confidential source ("CS") a single photo for pretrial identification was unduly suggestive so as to violate the right to due process, and tainted any in-court identification by the CS.

### A.   Legal Standard

"Suggestive pretrial identification procedures may be so impermissibly suggestive as to taint subsequent in-court identifications and thereby deny a defendant due process of law." *United States v. Love*, 746 F.2d 477, 478 (9th Cir. 1984). To determine whether a challenged identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification, we must examine the totality of the surrounding circumstances." *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985). "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012) (citations omitted). "Even when the police use such a procedure, suppression of the resulting identification is not the inevitable consequence." *Id.* The Due Process Clause requires courts to assess, "on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). "'[R]eliability [of the eyewitness identification] is the linchpin' of that evaluation." *Id.* at 724-25 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

To determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive[,] the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

**B.     Discussion**

Defendant has demonstrated that the single photo show-up, rather than an array of other various people, was both suggestive and unnecessary.  The government contends that showing a single photo to the CS was not suggestive because FBI Agent Hughes did not reveal any identifying information and did not mention the September 12, 2013 controlled buy.  However, the CS was shown Moss's DMV license picture only four days after the controlled buy, by an FBI Agent who was recording the transaction, suggesting, under these circumstances, that the person in the photo was related to the investigation into the controlled buy.  Furthermore, the government has not shown that any exigent circumstances made a single photo show-up necessary or imperative, particularly where law enforcement agents had sufficient time to produce an array with photos of other individuals for a photo line-up.

Under *Perry*, even when law enforcement uses a suggestive and unnecessary procedure, "suppression of the resulting identification is not the inevitable consequence." 132 S. Ct. at 724.  As the Supreme Court recognized in *Perry*, the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a "substantial likelihood of misidentification" under a totality of the circumstances approach, rejecting the per se exclusionary rule applied in *United States v. Fowler*, 439 F.2d 133, 134 (9th Cir. 1971) (use of a single photograph for witness identification was impermissibly suggestive and unnecessary and "only a per se exclusionary rule as to such testimony can be an effective sanction") (citation omitted).  *See Perry*, 132 S. Ct. at 724-25. The court must determine whether the identification testimony (whether concerning the out-of-court identification or a subsequent in-court identification) is nonetheless sufficiently reliable to be admitted into evidence.  *United States v. Nash*, 946 F.2d 679, 681 (9th Cir. 1991) (citing *Bagley*, 772 F. 2d at 492).  Applying the *Biggers* factors here to determine whether the identification was reliable even though the single photo show-up was suggestive, the court finds that the suggestive procedure did not create substantial likelihood of misidentification:

1. <u>Opportunity of witness to view</u>.  As the CS's video footage shows, the CS approached a group of about 8 men in broad daylight, and interacted with one man for a few seconds.  The CS spoke to, and stood within arms length from, the person who sold him crack, though not always facing him.

2. <u>The degree of attention</u>.  The CS did not focus for more than a few seconds on the person selling him crack, but did exchange a few words, and stepped away from the other men in the group to complete the transaction.

3. <u>Accuracy of the witness's prior description of the criminal</u>.  The CS described a brown plaid lumberjack-type shirt, which is vaguely descriptive of Moss's black jacket, which had a graphic line design.  The CS also described a 40-year old black male with a clean shave, pock marks and gap tooth.  Though defendant contends he has facial hair and no pock marks, he does not dispute that he has a noticeable gap in his lower front teeth, as seen in the officers' video of the bicycle stop.  The CS described the suspect as 5'7" and Moss is 5'4" - not a significant discrepancy in the height description.

4. <u>The witness's level of certainty</u>.  Defendant contends that the record does not demonstrate the CS's level of certainty in identifying Moss, but the FBI agent's report indicates that upon being shown defendant's driver's license photo, the CS recalled specific details about his encounter with defendant: "That's the guy who sold me crack cocaine on Mead near the Boys Club last week.  He was wearing the lumberjack jacket and he's got a pockmarked face."  Hughes Decl., Ex. D.

5. <u>The length of time between the crime and the confrontation</u>.  Only four days passed between the controlled buy and the photo identification, so that the CS's recollection would not be stale.

The record shows that the CS had close, albeit brief, contact with the person who sold him narcotics, in daylight, and provided unique identifying details such as the suspect's gap tooth and lumberjack, brown plaid shirt, which is consistent with defendant's jacket with

4

graphic lines.  These features of reliability are not outweighed by the suggestive single photo show-up procedure, particularly where the CS referred again to defendant's distinctive jacket and pock marks upon seeing defendant's driver's license photo, without being prompted or reminded that he had previously reported those characteristics.  Under the totality of the circumstances, the court finds sufficient indicia of reliability to determine that there is no substantial likelihood of misidentification.  The CS's identification is therefore admissible.  *See Manson v. Brathwaite*, 432 U.S. 98, 113 n.14 (1977) ("Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.") (citation and internal quotation marks omitted).

Defendant's motion to suppress the witness identification is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 4, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge

5